UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GREGORY SHEA, on behalf of himself and All Others Similarly Situated,<br><br>                              Plaintiff,<br>      v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>                              Defendant. | 07-CA-11384-JLT |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND**

Pursuant to 28 U.S.C. §1447(c), Plaintiff has moved this Court to remand the above captioned proceeding to state court. Defendant removed this action on July 30, 2007. As explained in detail herein, Defendant's removal of this action was improper, and this case should be remanded to state court.

**BACKGROUND**

Plaintiff brings this action on his own behalf and on behalf of a class of Massachusetts current and former employees of the Defendant. The putative class consists of employees who "worked for Defendant performing any of the functions of unloading, sorting, tagging and reloading packages at any of its facilities in the Commonwealth of Massachusetts" since July 1, 2004. Complaint, ¶3. The complaint asserts a single claim for a violation of a Massachusetts statute, M.G.L. c. 149, §148.[1] That law requires that an employer pay an employee all wages earned on a timely basis – in this case, within six days of the completion of a pay period. *Id.* The Plaintiff alleges that he and other persons with similar jobs were not paid for all hours worked within the

---

[1] Plaintiff did not assert a breach of contract claim based on the collective bargaining agreement ("CBA"). There simply is no allegation that the CBA was violated.

statutorily required six-day period. The uncompensated time consists of three categories: (1) five minutes per work day not counted by the Defendant's time clocks; (2) periodically scheduled meetings, trainings, and testing sessions ("sessions") before each employee's shift; and, (3) periodic reporting time in which the employees were required to report to work but were not paid for three hours of work when informed that the employer did not need their services. Complaint, ¶¶ 5-7. Other than the 5 minutes per work day, Plaintiff did not quantify the amount of time spent in the pre-work sessions or the number of times employees reported to work without compensation – as these issues will be developed more fully in discovery.

## ARGUMENT

In its Petition for Removal, Defendant made two arguments. First, in paragraphs 12 and 13 of its Petition for Removal (Docket Entry No. 1) ("Petition"), it argues that the claim is preempted pursuant to Section 301 of the Labor Management Relations Act ("LMRA") because resolution of the claim "depends upon on the interpretation and enforcement" of the CBA, rendering removal appropriate on the basis of federal question jurisdiction. Second, in paragraphs 14 through 17 of its Petition, it argues that this Court has original jurisdiction over the action because it is a putative class action with over $5,000,000 in controversy and there is minimal diversity. Because the Plaintiff's claim does not involve a "real interpretive dispute" concerning the terms of the CBA, but rather asserts a claim for a "violation of a state law without asserting a breach of the CBA," there is no federal preemption. *Fant v. New England Power Service Co.*, 239 F.3d 8, 15, n. 7 (1st Cir. 2001). In addition, Defendant has failed to meet its burden to show that there is $5,000,000 in controversy. Indeed, it has provided only lawyer argument and speculation on the issue, and even its counsel's assertions are not consistent with the allegations of the complaint. Thus, removal was improper, and this case should be remanded to state court.

**I.      There is No Federal Preemption by the Labor Management Relations Act**

Defendant cites a Second Circuit case for the proposition that a "wage and hour claim requir[ing] analysis of [a] collective bargaining agreement" is preempted by the Section 301 of the LMRA. Petition, ¶13 (citing *Vera v. Saks & Co.*, 355 F.3d 109 (2nd Cir. 2003)). That is not the law. In that case, the employee challenged the legality of a provision of the CBA under New York law, and to resolve that dispute would have "require[d] substantial analysis of the CBA." *Vera*, 355 F.3d at 115-116. However, the Second Circuit was clear that "if a state prescribes rules or establishes rights and obligations that are independent of a labor contract, actions to enforce such independent rules or rights would not be preempted by Section 301." *Id.* at 115. Mere referral to the CBA to obtain information about the hourly wage for purposes of establishing damages would not result in preemption. *Id.*[2]

That is precisely the case here. As the Massachusetts Appeals Court made clear, c. 149, §148 is "a distinct independent statutory right that can be enforced judicially even though the subject matter of the [claim] is incorporated into the plaintiffs' collective agreement." *Newton v. Commissioner of the Dept. of Youth*, 62 Mass.App.Ct. 343, 346 (2004). The Court noted that:

> . . . it is . . . well established that there are certain personal, statutory rights that can be enforced judicially even though they are incorporated into a collective bargaining agreement. [citations omitted]. The mere fact that those rights may be created both by contract and by statute and may be violated by the same factual occurrence does not vitiate their distinct and separate nature.

*Id.* Defendant's argument cannot be squared with controlling law as set forth in *Newton*. The First Circuit has reached the same conclusion regarding federal wage and hour disputes. For example, in *O'Brien v. Agawam*, 350 F.3d 279 (1st Cir. 2003), the court held that rights conferred by statute were

---

[2] *See also, Fant*, 239 F.3d at 15 (checking wage rates set forth in CBA does not rise to interpretation, and cases "alleging a violation of state law without asserting a breach of the CBA" are not preempted).

"conceptually distinct from those created by private agreement" and that statutory rights do not "merge into contractual ones" whenever the statute and the CBA "overlap." *Agawam*, 350 F.3d at 285. Thus, Defendant's observation that there is a grievance procedure contained in the CBA has no bearing on whether the claim could also be enforced in court – just as in *Agawam* and *Newton*. *Id.* at 286 ("grievance and arbitration procedures in the CBAs did not bar the officers from filing their [federal statutory wage] claims directly in federal court."); *Newton*, 62 Mass.App.Ct. at 347 ("plaintiffs were not required to pursue administrative remedies before commencing their actions in [state] court to recover overtime and the other wages claimed.").

When faced with a state law claim involving employees subject to a CBA, the First Circuit instructs the district court to "locate the line between the need for mere consultation of a CBA, which does not demand federal preemption, and more active interpretation of that agreement." *Fant*, 239 F.3d at 15. In the absence of a "real interpretive dispute" concerning the CBA, a state law claim is not preempted. *Id.* Defendant has merely referenced the existence of a CBA in its Petition, and cited to various pages of the agreement. Petition, ¶12. It has not identified any "real interpretative dispute" concerning the terms of the CBA, and how that interpretive dispute would affect the claims at issue here. This is not surprising. Plaintiff's claim is based on an independent statutory right, and it has described its claim in the complaint (and the legal authority for the claim), entirely without reference to the CBA. Having failed to identify a "real interpretative dispute" concerning the CBA, Defendant's contention that the Plaintiff and putative class' independent state statutory claims are preempted is without merit. The claims are properly brought in a judicial forum, and there is no federal preemption or, accordingly, federal question jurisdiction.

## II. Defendant's Lawyer Argument Does Not Meet Its Burden to Remove this Action

Defendant next argues that, pursuant to 28 U.S.C. §1332(d)(2), this Court has original jurisdiction over this action. It contends that minimal diversity is present, and that the amount in

controversy is over $5,000,000. Petition, ¶¶14-16. The First Circuit has held that "removal statutes are strictly construed" and that "defendants have the burden of showing the federal court's jurisdiction." *Danca v. Private Health Care Systems, Inc.*, 185 F.3d 1, 4 (1st Cir. 1999). The Class Action Fairness Act ("CAFA") does not "alter the burden of proof" when addressing whether removal is appropriate. *Moniz v. Bayer A.G.*, 447 F.Supp.2d 31, 33-34 (D.Mass. 2006) (Gorton, J) ("the clear majority of courts that have addressed the issue have held that **even where CAFA applies, the burden of proof on a motion to remand remains with the removing party** because the text of the statute says nothing about changing the long-standing rule.") (emphasis added) (citing *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005); *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 686 (9th Cir. 2006)); *see also, Rodgers v. Central Locating Service, Ltd.*, 412 F.Supp.2d 1171 (W.D.Wash. 2006)(same, remanding state wage and hour class action to state court).

The First Circuit has not determined whether the Defendant's burden to establish that removal is appropriate requires a showing by a preponderance of the evidence, or whether the showing must be established to a legal certainty. *Compare Wheeler v. Allstate Floridian Indemnity Co.*, 2006 WL 1133249 (N.D.Fla. Apr. 26, 2006)(remanding putative class action to state court because defendant failed to establish by preponderance of the evidence that $5,000,000 amount in controversy was satisfied) *with Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994 (9th Cir. 2007)(remanding state wage and hour class action to state court where Defendant did not show to a legal certainty that amount in controversy was satisfied); *see also, Radlo v. Rhone-Poulenc, S.A.*, 241 F.Supp.2d 61, 63-64 (D.Mass. 2002)(noting uncertainty of correct standard for establishing that a plaintiff's damages will exceed the amount in controversy requirement for diversity jurisdiction).

Regardless of which standard is utilized, Defendant has failed to meet its burden here. In its Petition, Defendant relies exclusively on lawyer argument – not evidence – to claim that the amount

in controversy exceeds $5,000,000.[3] Defense counsel speculates as to the average hourly rate paid to the employees, the number of minutes spent in pre-shift sessions, and the actual number of putative class members. Petition, ¶15 (*e.g.*, "If the pay rate averages $10/hour. . ."); ¶15 (arbitrarily choosing "ten minutes of alleged unpaid shift time and sessions" per day and a total of 2,000 class members). Such speculation cannot satisfy Defendant's burden to show that removal was appropriate even under the most lenient standard. *Radlo*, 241 F.Supp.2d at 64 (speculative assertions do not satisfy burden). Plaintiff has alleged only that the putative class members were deprived of compensation for five minutes per day of work, and an unspecified amount of time in pre-shift sessions and for reporting to work without pay. Those amounts require an analysis of materials and documents to be obtained in discovery. Defendant is not entitled to speculate as to the pertinent facts in order to satisfy its burden.

At this point, the only actual evidence is that there is a maximum of 2,791 potential class members in any given year. Exhibit A, ¶¶3-4. There simply is no evidence as to the total amount in controversy, or the facts that would be required to calculate that amount, *i.e.*, the actual number of putative class members, the amount of uncompensated time worked by putative class members, or the actual hourly rate paid to the putative class members (or the average hourly rate paid for all hours actually worked by class members). Given there is no such evidence, Defendant's burden

---

[3] During the meet and confer process required by Local Rule 7.1, Defense Counsel provided Plaintiff with an affidavit from Defendant attesting to the fact that Defendant employed approximately 2,791 part time hourly employees, and that this number of employees was roughly consistent dating back to July 1, 2004. The affidavit did not specify how many of those part time hourly employees were members of the putative class, or, in other words, worked for Defendant "performing any of the functions of unloading, sorting, tagging and reloading packages at any of its facilities in the Commonwealth of Massachusetts." Nor did the affidavit attempt to quantify the number of hours spent by each employee in uncompensated sessions prior to their shifts, or the actual average hourly rate paid to employees with these job responsibilities during the relevant period. Finally, the affidavit did not address how many times the putative class members were refused work after reporting, and were sent home without pay. The affidavit is attached hereto as Exhibit A.

cannot be satisfied. *Radlo*, 241 F.Supp.2d at 64 (evidence "insufficient to permit any reliable judgment about the extent" of potential damages, and assertions were "entirely speculative").

### III.   Conclusion

For the reasons stated herein, Plaintiff respectfully requests that this Court remand this action to state court.

Dated:  August 29, 2007                                    By the attorneys for the Plaintiff and the Class,


/s/ Todd S. Heyman
Thomas V. Urmy, Jr. (BBO #506620)
Todd S. Heyman (BBO #643804)
SHAPIRO HABER & URMY LLP
53 State Street
Boston, Massachusetts 02109
(617) 439-3939


Philip J. Gordon (BBO #630989)
GORDON LAW GROUP LLP
535 Boylston Street, 6th Floor
Boston, Massachusetts 02116
(617) 536-1800

### Certificate of Service

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") and paper copies will be sent to those indicated as nonregistered participants on the date of filing.

**/s/ Todd S. Heyman**
Todd S. Heyman